𝔍𝔫 𝔱𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰
𝔉𝔬𝔯 𝔗𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔖𝔬𝔲𝔱𝔥 𝔆𝔞𝔯𝔬𝔩𝔦𝔫𝔞

**BEAUFORT DIVISION**

| | | |
|---|---|---|
| David Lamont Brown, #297998, | ) | Civil Action No. 9:06-2532-JFA-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Nurse Joyce Kirk, Sergeant Abney, | ) | |
| Lieutenant Linda Butler, Captain | ) | |
| Middleton, and Major Phillip C. Anderson, | ) | |
| | ) | |
| Defendants. | ) | |

## I.  INTRODUCTION

The Plaintiff, David Lamont Brown ("Plaintiff" or "Brown"), was detained at the Greenwood County Detention Center ("GCDC") at the time of the alleged incidents giving rise to this action.  Proceeding *pro se*, he seeks relief from the above-captioned Defendants, Nurse Joyce Kirk ("Nurse Kirk"), Sergeant Abney ("Sergeant Abney"), Lieutenant Linda Butler ("Lieutenant Butler"), Captain Middleton ("Captain Middleton"), and Major Phillip C. Anderson ("Major Anderson"), pursuant to 42 U.S.C. § 1983 based upon allegations that he was denied proper medical care.  Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II.  THE *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  Under established local procedure in this judicial

district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214, codified at 28 U.S.C. § 2254.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

 *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).  Such is the case with the present complaint.

### III.  PROCEDURAL HISTORY

The Plaintiff commenced this action on September 9, 2006[1] against the above-captioned Defendants.[2]  [1] The Plaintiff alleges he was denied his prescription medication and also denied additional medical treatment from a "bone specialist" for his dislocated knee.  Plaintiff alleges he was given Ibuprofen, which did not help his pain.  The Plaintiff further contends that he was caused pain to his dislocated knee as a result of having to walk up 106 stairs at least five times per day because the GCDC administration refused to assign him to a first floor cell.[3]  Plaintiff seeks monetary damages.[4]

On September 21, 2006, the Court issued an Order requesting that the case to be brought into proper form.  [3]  Thereafter, an Order was issued on October 6, 2006 which instructed the Clerk of Court to issue the summons and copies of the complaint to the Defendants for service of process by the United States Marshals.  [8]  On November 8, 2006, an answer was filed on behalf of Sergeant Abney, Lieutenant Butler, Captain Middleton, and Major Anderson (collectively, the "GCDC Defendants").  [10]  The court notes that the answer filed by the

---

[1]     Should a limitations issue arise, the Plaintiff will have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988), with respect to the "delivery" date of his complaint.  [3]

[2]     Plaintiff initially had named Sheriff Dan Wideman in his Complaint [1] but subsequently requested on September 25, 2006 that this defendant be "removed" from the action.  [6]  As a summons had not yet been issued for Sheriff Dan Wideman, the court considered the Plaintiff's motion to be pursuant to Rule 41(a), F. R.C.P., and granted the motion.  [7]

[3]     Complaint [1] at p. 3.

[4]     Complaint [1] at pp. 4-5.  Plaintiff also asked that criminal charges be brought against all of the Defendants.  However, it is well-settled that no citizen has an enforceable right to institute a criminal prosecution.  *Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *see also Lopez v. Robinson*, 914 F.2d 486 (4th Cir. 1990) (prison officials are entitled to qualified immunity for their actions in screening inmate requests that they be transported to court to press criminal charges).

GCDC Defendants did not mention whether the Plaintiff had exhausted his administrative remedies prior to filing suit.

On November 15, 2006, counsel for the Defendant Nurse Kirk entered an appearance on the record and requested an extension of time in which to answer on behalf of that Defendant. [13; 14]  The motion for an extension of time was granted by the undersigned by a written Order filed on November 16, 2006.  [15]  On December 12, 2006, an answer was filed on behalf of Nurse Kirk which asserted various affirmative defenses, including as a defense the allegation that the Plaintiff failed to exhaust his administrative remedies prior to filing suit.  [17]

On December 22, 2006, counsel for the GCDC Defendants filed a motion for summary judgment and a supporting memorandum with exhibits.  [18]  Accordingly, an Order was issued on December 27, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the Motion for Summary Judgment within thirty-four (34) days.  [20]

On January 23, 2007, the undersigned issued an Order which directed Nurse Kirk to file a dispositive motion within ten (10) days.  [21]  On January 30, 2007, a motion for summary judgment was filed by Nurse Kirk [22], and a second *Roseboro* order was issued to the Plaintiff. [23]  On February 7, 2007, the undersigned issued an order directing the Plaintiff to respond by February 27 to the motion for summary judgment filed on behalf of the GCDC Defendants.  [24] The Plaintiff then filed a motion requesting the appointment of counsel, which was denied by the undersigned on February 13, 2007.  [25; 26]  On February 27, 2007, the Plaintiff filed his response in opposition to the motions for summary judgment filed by the GCDC Defendants and by Nurse Kirk [27], and on March 1, the Plaintiff filed his own motion for summary judgment. [30]

Both the GCDC Defendants and Nurse Kirk filed replies to the Plaintiff's response in opposition to their motions for summary judgment.  [31; 33]  Thereafter, the GCDC Defendants and Nurse Kirk filed responses in opposition to the Plaintiff's motion for summary judgment. [34; 36]  Thus, pending before the court are the following motions: The GCDC Defendants' motion for summary judgment [18], Nurse Kirk's motion for summary judgment [22], and the Plaintiff's motion for summary judgment.  [30]  As the issues have been joined, this case is ripe for review by the undersigned.

## IV.  FACTS

On April 21, 2006, the Plaintiff was ordered into the custody of the GCDC by a municipal court judge.  *(See* Affidavits of Anderson, Butler, Middleton, at ¶ 7, and GCDC Defendants' "Inmate Records" at  p. 1).[5]  The records before the court indicate that at the time of Plaintiff's arrest, the Plaintiff attempted to avoid authorities by hiding in a closet; he apparently suffered a fall at that time.  The Plaintiff was taken into custody and transported to Self Regional Healthcare ("SRH") in Greenwood.[6]  At SRH, the Plaintiff complained of a re-injury to his right elbow and an injury to his left knee.  (*See* Records from SRH attached to the GCDC Defendants' Memorandum as [22-5] at p. 1, 4).  Plaintiff alleges the physician at SRH explained to Greenwood Police Officer Byrd that the X-rays showed that Plaintiff had "bone misplacement" or a dislocated left knee; Plaintiff alleges that the physician wrote him a prescription for

---

[5]  The order was based on criminal charges pending against Plaintiff including disregard for traffic device, driving under suspension, trespass after notice, simple possession of marijuana, open container, and failure to stop for a blue light.  *See* GCDC Defendants' Exhibit 2, "Inmate Records", p. 1.

[6]  With respect to Sergeant Abney, the only allegation that Plaintiff makes against her relates to her suggestion that the Plaintiff be taken to SRH for an examination.  As a matter of law, the court finds that Sergeant Abney's acts do not constitute deliberate indifference towards the Plaintiff.

medication for his left knee. Plaintiff further claims that his left elbow had been injured, and that he received a second prescription for pain in his left elbow. *(Id* at p. 4).

Records before the court indicate that X-rays were taken of Plaintiff's left knee, which revealed "moderate osteoarthritis" but no fracture or evidence of effusion. X-rays also were taken of Plaintiff's right shoulder and right elbow; these x-rays showed no fractures and were unremarkable. (*See* Records from SRH attached to the GCDC Defendants' Memorandum at pp. 6-7). Plaintiff was discharged from SRH to the GCDC with instructions to take 600 mg of Motrin every eight (8) hours as needed for pain. (*Id.* at p. 12). Thereafter, the Plaintiff was booked into the GCDC and was screened by Corporal Woody, who visualized and noted a "cut, bruise or other minor injury" to the Plaintiff's left knee and also noted that Plaintiff used an inhaler for asthma. However, Corporal Woody did not indicate that the Plaintiff needed to be housed in the infirmary or should be listed on the next sick call for his knee. (*See* Affidavit of Nurse Kirk [22-3] ("Kirk Affidavit") at ¶ 11, and Receiving Screening Form dated April 21, 2006, attached as M-033 and M-029 to Kirk Memorandum [22-2]).

The first grievance Plaintiff made to GCDC staff concerning medical treatment was written on the day he was booked into the GCDC, on April 21, 2006. In that grievance, the Plaintiff complained that his left knee and right elbow were swollen stiff, and he claimed that a unidentified nurse at GCDC refused to treat him. (*See* Grievance dated April 21, 2006, attached to the GCDC Defendants' Memorandum [18]; *see also* Affidavit of Major Anderson ("Anderson Affidavit") at ¶ 8 *and* Kirk Affidavit at ¶ 12). However, the comments authored by GCDC staff indicate that the Plaintiff was not treated because when he was booked into GCDC, the Plaintiff refused to fill out a medical sick call form. (*See* Grievance dated April 21, 2006, attached to the GCDC Defendants' Memorandum ). Pursuant to GCDC policy, the medical sick call form is the

request form that has to be completed in order for an inmate to receive medical treatment. (Anderson Affidavit at ¶ 3). The Plaintiff also marked the "do not consent" box on the Routine Services Consent Form, indicating he was refusing routine services. (Anderson Affidavit at ¶ 8).

On April 22, 2006, Nurse Kirk filled out an inmate sick call request in an attempt to assist the Plaintiff obtaining medical treatment regarding any immediate need he might have for an inhaler for his asthma. (Kirk Affidavit at ¶ 13; *see also* Inmate Sick Call Request dated April 22, 2006, attached to the GCDC Defendants' Memorandum). The Plaintiff refused to sign a release form so that Nurse Kirk could obtain his medical records from his treatment at SRH. (Kirk Affidavit at ¶ 13).

The Plaintiff filed a second grievance on April 24, 2006. (*See* Grievance dated April 24, 2006, attached to the GCDC Defendants' Memorandum). Plaintiff's second grievance, however, did not mention his dislocated left knee, or any other medical problems, or any concerns regarding medication. Instead, the Plaintiff complained in general about the medical care given by Southeastern medical personnel.[7] In pertinent part, the grievance states:

> GCDC is dening [sic] me medical attion [sic] the nurse told me she wasn't gonna treat me until I sign over all my medical records. So very unprofessional of her. First ask me whats [sic] wrong, not for me to sign over my personal life history. . . . You all need to pay close atittion to [Nurse], she has problems that may coast [sic] GCDC problem [sic] if I'm not treated and cared for properly. . . . . GCDC need [sic] a better nurse point blank.

The grievance was forwarded to the medical department. (*See* Grievance dated April 24, 2006, attached to the GCDC Defendants' Memorandum). Despite the fact that Plaintiff had filled out a grievance form, he did not fill out a medical request form on that date to be seen by the medical staff, and did not fill out any medical request forms during the time he remained

---

[7]     GCDC employees do not provide medical services to persons housed at the GCDC. Instead, all medical services are provided by a corporate entity, Southeastern Services Group Inc. ("Southeastern"), and its employees, pursuant to a contract. (Affidavits of Anderson, Butler, Middleton, ¶ 5). Southeastern's employees are not employees of Greenwood County. (Anderson Affidavit at p. 5).

detained at the GCDC–through May 3, 2006. (Kirk Affidavit at ¶¶ 14-15). Furthermore, the Plaintiff did not complete any other grievance forms regarding medical care during this time. (Kirk Affidavit at ¶¶ 14-15).

On April 30, 2006, the Plaintiff complained about knee pain to a member of the Southeastern medical staff other than Nurse Kirk; pursuant to a standing physician's order, the Plaintiff was given 400 mg. Ibuprofen for seven days. Plaintiff started taking the Ibuprofen that day. Nurse Kirk did not personally provide any medical care to the Plaintiff on April 30, 2006. (*See* Progress Note, Physicians Orders, and Medication Administration Record, each dated April 30, 2006, attached as M-032 and M-029 to Kirk Memorandum; *see also* Kirk Affidavit at ¶ 16).

On May 2, 2006, the Plaintiff refused to take his Ibuprofen because he objected to the cost of the medication and told Nurse Kirk he would get his medication from home. (*See* Inmate Sick Call Request, dated May 2, 2006, attached as M-023 to Kirk Memorandum; *see also* Kirk Affidavit at ¶ 17). Plaintiff was released from the GCDC on May 3, 2006. (*See* Kirk Affidavit at ¶ 7).

On July 28, 2006, the Plaintiff again was booked into the GCDC. (*See* Kirk Affidavit at ¶ 7). Also on that date, the Plaintiff filed an inmate grievance form, asking to be placed in a top floor cell, and to see a doctor immediately, and also demanding that he be moved "off this bed rest follishness [sic][.]" (*See* Inmate Grievance Form, dated July 28, 2006, attached to Kirk Memorandum; *see also* Kirk Affidavit at ¶ 20). The July 28, 2006 grievance was the first notice that Lieutenant Butler had that the Plaintiff had a conflict with the medical staff; prior to that date, Lieutenant Butler was not aware of Plaintiff's alleged knee injury or his concerns regarding medication. (*See* Affidavit of Lieutenant Butler ("Butler Affidavit") at ¶ 8). The July 28, 2006 grievance, which was addressed by Lieutenant Butler, specifically addressed Plaintiff's displeasure with the bed rest order given by Nurse Kirk due to his complaints of pain in his left

knee.[8]  In addressing this grievance, Lieutenant Butler learned that the Plaintiff requested a top tier cell due to an alleged dislocated knee.  This was the first time any non-medical staff at GCDC knew that the Plaintiff claimed he suffered from a dislocated knee.  (Butler Affidavit at ¶ 8, Anderson Affidavit at ¶ 10).

On July 29, 2006, the Plaintiff completed an Inmate Sick Call Request which stated:

> I have a dislocated left knee.  "I'm unable to go up and down these stairs.  Please provide me a cell on the top floor, before my knee give out on me while going up or down these stairs.  Please"[.]

Nurse Kirk had no other information regarding the condition of Plaintiff's knee except for Plaintiff's own statement on the July 29, 2006 Sick Call Request.  (See Sick Call Request dated July 29, 2006, attached to Kirk Memorandum).  Therefore, she ordered the Plaintiff on bed rest until he could be seen and evaluated by a physician.  (Kirk Affidavit at ¶ 21).  Lieutenant Butler followed up on the matters that Plaintiff had set forth in that grievance, and learned that there was no evidence that the Plaintiff's knee had been dislocated, but that Nurse Kirk had ordered bed rest (Butler Affidavit at 8), pending a physician's evaluation of his knee on July 30, 2006.  (*See* Sick Call Request dated July 29, 2006, attached to Kirk Memorandum).

On July 30, 3006, the Plaintiff completed an Inmate Sick Call Request form which stated:

I'm refussing [sic] medical attention.  Remove me off bed rest "fourthwith" [sic]

On that same form, Nurse Kirk noted that the Plaintiff was still on bed rest based upon his statement on his July 29 Sick Call Request that he had a trick knee that gives out on him.  Nurse Kirk further noted that the Plaintiff "demanded to be placed on the top floor, in room [with] window.  When this request was not met, [the Plaintiff complained of] knee problems

---

[8]    Although this grievance is dated July 28, 2006, it specifically refers to the July 29, 2006 sick call request, which suggests to the court that the grievance was written on July 29.

when placed on bedrest, [and] wrote the above." (*See* Sick Call Request dated July 30, 2006, attached to Kirk Memorandum).

On July 31, 2006, the Plaintiff completed two (2) Inmate Grievance Forms. In one form, the Plaintiff admitted:

> I filled out a medical slip only to try to get a top floor cell not for these problems. I'm denying medical attention from this nurse at [GCDC]. I would like to deny medical attention fourthwith [sic] . . . . I would like to withdraw my request and deniey [sic] medical attention isn't that my right? (*See* Inmate Grievance Form dated July 31, 2006, attached to Kirk Memorandum).

Lieutenant Butler investigated this Grievance and noted that he had spoken with Nurse Kirk and learned that the Plaintiff's complaints of his dislocated knee had caused Nurse Kirk to put him on bed rest until he could be seen by a GCDC doctor later that week. (*See* Inmate Grievance Form dated July 31, 2006). In the second Inmate Grievance Form dated July 31, 2006, the Plaintiff stated:

> I don't want to move . . .
>
> I don't want medical attention . . .
>
> Could you all remove me off bed rest . . .
>
> Please help me. I'm not hurt
>
> Nor do I need medical attention  (*See* Inmate Grievance Form dated July 31, 2006).

Lieutenant Butler again investigated and discussed the grievance with the medical staff. (Butler Affidavit at ¶ 9; GCDC Defendants' Grievance Forms dated July 31, 2006). Lieutenant Butler stated that the bed rest orders placed by Nurse Kirk were followed per GCDC Detention Center policy to adhere to recommendation of the medical professionals in the medical needs of the inmates. (Butler Affidavit at ¶¶ 8-9).

On August 3, 2006, the Plaintiff was seen by a physician who vacated the bed rest order because the Plaintiff's knee did not appear to be seriously injured, but ordered Ibuprofen for the

Plaintiff as needed.  (Kirk Affidavit at ¶ 26).  On or about this date, the Plaintiff authorized the release of his medical records from SRH to GCDC.  (Kirk Affidavit at ¶ 27).  The records were received on August 6, 2006; a review of the records indicated that there was no fracture or dislocation of the Plaintiff's left knee, right shoulder, or right elbow.  The treating physician at SRH had diagnosed the Plaintiff with a bruised left knee and tendonitis in the right elbow and had ordered over-the-counter Motrin as needed.  (Kirk Affidavit at ¶ 28).

## V.  SUMMARY JUDGMENT STANDARD

The determination of each motion for summary judgment pending before this court is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  Id. at 323; Fed. R. Civ. P. 56(c).

Summary judgment is proper if, viewed in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

The non-moving party is entitled to the most favorable inferences that reasonably may be drawn from the forecast evidence.  *Ross*, 759 F.3d at 364.  Put another way, all justifiable inferences must be drawn in favor of the non-moving party.  *Miltier v. Beorn*, 896 F.2d 848, 852 (4th Cir. 1990); *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*, 818 F. 2d 1126 (4th Cir. 1987).  Genuine

disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Md. Medical Sys. Corp.*, 855 F. 2d 167 (4th Cir. 1988).

Therefore, when evaluating the appropriateness of summary judgment, this Court must construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (internal quotation marks omitted); Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Accordingly, this Court must enquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## VI.  DISCUSSION

### A.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1996 (the "PLRA"), codified as amended at 42 U.S.C. § 1997e(a), provides in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in

court." *Jones v. Bock*, 127 S.Ct. 910, 2007 WL 135890 at *8 (Jan. 22, 2007) (*citing Porter*, 435 U.S. at 524).

The United States Supreme Court, in *Woodford v. Ngo* 548 U.S. —, 126 S.Ct. 2378 (2006), held that to properly exhaust administrative remedies a prisoner must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ----, 126 S.Ct. 2378. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." *Jones v. Bock*, — U.S. —, 127 S.Ct. 910, 923 (2007). The failure to exhaust is an affirmative defense under the PLRA. *Jones v. Bock*, — U.S. ----, 127 S.Ct. at 921; *see also*, *Casanova v. DuBois*, 304 F.3d 75 (1st Cir. 2002); *Paese v. Hartford*, 449 F.3d 435 (2nd Cir. 2006); *Ray v. Kertes*, 285 F.3d 287 (3rd Cir. 2002); *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674 (4th Cir. 2005); *Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006); *Foulk v. Charrier*, 262 F.3d 687 (8th Cir. 2001); *Panaro v. City of North Las Vegas*, 432 F.3d 949 (9th Cir. 2005).

The court notes that "[u]nder Federal Rule of Civil Procedure 8(c), a failure to plead an affirmative defense results in a waiver of that defense[.]" In his complaint, the Plaintiff states that he filed grievances regarding his alleged denial of medical treatment on April 21, 2006 through April 28, 2006. He further alleges that he did not receive a final answer concerning the grievance, explaining: "Inmates never recive [sic] copies or replies from administraton [sic] here [at] GCDC."[9] With respect to exhaustion of administrative remedies, the burden is on the Defendants to show that the Plaintiff failed to exhaust available remedies under GCDC regulations, and the undersigned concludes that the Defendants failed to do so. The GCDC Defendants failed to mention failure to exhaust as an affirmative defense in their Answer [10], and the issue of whether Plaintiff exhausted his administrative remedies prior to bringing this

---

[9]     *See* Complaint [1] at p. 2.

action was not specifically discussed in their memorandum in support of their motion for summary judgment. [18-2] Thus, the GCDC Defendants have waived this defense.

Although Nurse Kirk <u>did</u> assert in her answer that the Plaintiff failed to exhaust his administrative remedies prior to filing suit [17], she did not specifically argue in her memorandum in support of summary judgment that Plaintiff failed to exhaust his administrative remedies. As the court is of the opinion that none of the Defendants have carried their burden of proof with respect to whether Plaintiff exhausted his administrative remedies, and therefore the court will turn to the merits of the case.

### B. Plaintiff's Action Pursuant to Section 1983

Plaintiff has brought this action alleging he was denied adequate medical care for his dislocated left knee and denied his prescription medication, all in violation of his civil rights pursuant to 42 U.S.C. § 1983. The United States Supreme Court has held: "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42 (1988). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979).

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* In the context of alleged indifference to serious medical needs, in order to state a Section 1983 claim, the plaintiff must allege that he suffered specific injury as a result of the specific conduct of a defendant, and show an affirmative link between the injury and that conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

Whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry.  First, the prisoner must show that he was deprived of an objectively serious human need.  *Johnson v. Quinones*, 145 F.3d 164 (4th Cir. 1998).  Second, the plaintiff must demonstrate that the prison official acted with a "sufficiently culpable state of mind."  *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). As the Plaintiff was a pre-trial detainee at the time of the incidents at issue, the analysis of his allegations are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, rather than under the Eighth Amendment.  *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992); *Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987); *Nelson v. Collins*, 659 F.2d 420, 425 (4th Cir. 1981) ( en banc ); *Loe v. Armistead*, 582 F.2d 1291, 1293-94 (4th Cir. 1978), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980).  Nevertheless, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need).  *See Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir. 1988), citing *Estelle,* 429 U.S. 97.

Furthermore, in  *Miltier v. Beorn,* the Fourth Circuit Court of Appeals noted that the medical treatment at issue "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment."  *Miltier*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted).  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail.  *Estelle,* 429 U.S. 104; *Farmer v. Brennan,* 511 U.S. 825 (1994); *Sosebee v. Murphy,* 797 F.2d 179 (4th Cir. 1986).  Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee

to a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). Furthermore, the type and amount of medical care is discretionary. *See Brown v. Thompson,* 868 F.Supp. 326 (S.D.Ga. 1994). The mere failure to treat all medical problems to a prisoner's satisfaction, even if actual medical malpractice is involved, is insufficient to support a claim under Section 1983. *Sosabee v. Murphy*, 797 F.2d 179 (4th Cir. 1986). Finally, it is well established that even medical malpractice does not constitute a violation of an inmate's constitutional rights simply because he happens to be a prisoner or an inmate. *Estelle v. Gamble,* 429 U.S. 97 (1976). Negligence is not actionable under 42 U.S.C. § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986).

As a *pro se* litigant, Plaintiff's Complaint must be construed liberally by this Court. Nevertheless, a careful review of the pleadings in this case leads this Court to conclude that, for the reasons set forth below, Plaintiff has not raised any genuine issue of material fact, and therefore all of the Defendants are entitled to judgment as a matter of law.

## 1.  Plaintiff's Claims Against the GCDC Defendants

In the present case, Captain Middleton states by Affidavit that the Plaintiff never informed her or those persons under her supervision that he suffered from a dislocated left knee. (Middleton Affidavit at ¶ 8). Furthermore, Captain Middleton states that the Plaintiff never complained to her about medication problems. (Middleton Affidavit at ¶ 9). Finally, Captain Middleton never withheld any medications from Plaintiff. (Middleton Affidavit at ¶ 9). As Captain Middleton states she was without knowledge of any of the Plaintiff's complaints, and the Plaintiff has offered no evidence to contradict her Affidavit, Captain Middleton is entitled to summary judgment.

Major Anderson and Lieutenant Butler did not know that Plaintiff was allegedly suffering from a dislocated knee until the Plaintiff filed a grievance on July 28, 2006 which set forth his

personal problems with Nurse Kirk, and complained about being put on bed rest.  (Anderson Affidavit at ¶ 10; Butler Affidavit at ¶ 8).  Lieutenant Butler again investigated and discussed the grievance with the medical staff, and on August 3, 2006, the order for bed rest was lifted by a physician.  Under these facts, the court does not find any deliberate indifference towards the Plaintiff.

With respect to the Plaintiff's allegation that he did not properly receive his medication, Major Anderson states that he knew of only one grievance submitted by Plaintiff which related to medication.  On August 24, 2006, the Plaintiff filed a grievance regarding the search of his cell, where a stock pile of medication was found.  There was no indication that medication was being withheld, and the Plaintiff continued to receive his medication (Ibuprofen) in August 2006. (Major Affidavit at ¶ 12; *see also* Medication Administration Record attached to GCDC Defendants Memorandum as last page of Exhibit 1).  Finally, Lieutenant Butler has stated that so far as Plaintiff's medication was concerned, the Plaintiff complained to her only about having his medication crushed instead of in pill form.  (Butler Affidavit at ¶ 10; *see also* Medication Administration Record attached to GCDC Defendants Memorandum as last page of Exhibit 1, reflecting the order to crush the Plaintiff's Ibuprofen before administering it to him, presumably to discourage the Plaintiff from stockpiling the Ibuprofen).

The Plaintiff has not alleged or demonstrated either *Estelle* element essential to his claim–he has not shown deliberate indifference to a serious medical need.  Moreover, on these facts, it cannot be said that any of the GCDC Defendants transgressed any bright lines, nor would any reasonable law enforcement official have reason to think that any circumstances as existed in this case could give rise to a constitutional claim.  Therefore, it is recommended that the GCDC Defendants be granted summary judgment.

## 2.  The Plaintiff's Claims Against Nurse Kirk

Plaintiff's complaint alleges that during his detention at GCDC, he did not receive adequate medical care and treatment from Nurse Kirk, who is an employee of Southeastern. Plaintiff contends in his Complaint that his dislocated left knee and concerns regarding his left elbow were ignored, and his prescription medication was withheld from him.  However, the facts indicate that the Plaintiff has failed to state a claim of deliberate medical indifference as to Nurse Kirk.

Nurse Kirk has stated that every time she was advised that Plaintiff had a serious medical concern, if she were on duty, she evaluated him, and contacted a physician to ensure that the Plaintiff's medical complaints were properly handled.  (Kirk Affidavit at ¶ 29).  Every time the Plaintiff completed the paperwork to permit medical evaluation, Nurse Kirk or another person responded by evaluating the Plaintiff.  Nurse Kirk did not refuse to provide medical attention to any of the Plaintiff's medical complaints, and treated him within the accepted standards of nursing practice.  (Kirk Affidavit at ¶ 30).

The records from SRH reflect that the Plaintiff did not suffer from a dislocated left knee, or an injured elbow, and that the Plaintiff was not provided with any prescription medication. Instead, the Plaintiff was diagnosed with "moderate osteoarthritis" by the radiologist at SRH and upon being booked into the GCDC, Corporal Woody noted a "cut, bruise or other minor injury" on the Plaintiff's left knee.  In addition, the Plaintiff was instructed to take Motrin, as needed, for pain.

The Plaintiff alleges he suffered pain as a result of Nurse Kirk's failure to refer the Plaintiff for treatment by a "bone specialist" for his dislocated knee, and her refusal to give the Plaintiff his prescription medication during April 21-28, 2006.  (*See* Plaintiff's memorandum in support of summary judgment [30]).  As mentioned above, the evidence shows that the Plaintiff

Page 18 of 22

did not have a dislocated knee, and was not prescribed any medication.  In short, the only support for Plaintiff's claim of a serious injury to his left knee is contained in his own pleadings. It is a well-established principle that, after a defendant makes a motion for summary judgment, the plaintiff bears the burden of making a showing sufficient to establish the existence of every element essential to his case.  Thus, the Defendants are under no obligation to present evidence disproving any elements of Plaintiff's claim.  Indeed, Plaintiff must come forward with an affirmative showing more significant than conclusory and self-serving allegations in order to survive the Defendants' motions for summary judgment.  *See, e.g.*, *Fuller v. County of Charleston*, 2006 WL 533381 at *5 (D.S.C. March 3, 2006) (Duffy, J.), *citing White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976) (conclusory allegations insufficient to avoid summary judgment). the self-serving statements set forth throughout his pleadings will not permit summary judgment to be granted in his favor.  *See, e.g.*, *Fuller v. County of Charleston*, 2006 WL 533381 (D.S.C. March 3, 2006) (Duffy, J.), *citing Larken v. Perkins*, 22 Fed. Appx. 114, *1 (4th Cir. October 29, 2001) (noting that the district court properly found a party's "own, self-serving affidavit[s] containing conclusory assertions and unsubstantiated speculation" insufficient to stave off summary judgment.); *National Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) ("Marvin J. Barnes' self-serving affidavit describing the content of the repurchase agreements is not enough to defeat National's motion for summary judgment."); *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) (holding that unsupported allegations "do not confer talismanic immunity from Rule 56.").

    As the evidence of record shows that there is no genuine issue as to any material fact, it is recommended that summary judgment be entered for the Defendants.  *See* Fed. R. Civ. P. 56(c).

## C.  State Law Claims

To the extent that the Plaintiff's complaint can be construed to set forth additional claims under state law, the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted to the Defendants, as set for above.  *See* 28 U.S.C. § 1367(c).

## D.  This Action Should be Deemed a Strike

Lastly, Section 804 of the PLRA, which amended § 1915(g), reads as follows:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.28 U.S.C. § 1915(g).

The instant action is wholly without merit, and should be considered frivolous and malicious within the meaning of the PLRA.  Therefore, it is recommended that it be counted as a "strike" against the Plaintiff.  *See* 28 U.S.C. § 1915A.[10]

---

[10]     *See*, e.g., *Dykeman v. Beaufort County Detention Center*, 2007 WL 221388 (Jan. 26, 2007)(action alleging inadequate medical care against county detention center was so frivolous and malicious that district court ordered the case be deemed a "strike" for purposes of the "three strikes" rule of 28 U.S.C. § 1915(g)).

## **<u>RECOMMENDATION</u>**

Based upon the foregoing, it is recommended that GCDC Defendants' motion for summary judgment **[18] should be granted**; Nurse Kirk's motion for summary judgment **[22] should be granted**; and the Plaintiff's motion for summary judgment **[30] should be denied**, **and this action should be deemed a "strike" against the Plaintiff pursuant to 28 U.S.C. § 1915A.**

George C. Kosko

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

March 30, 2007

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk

United States District Court

P.O. Box 835

Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).